UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| TRANSIT GROUP, INC., et al., | ) | Case No. 6:-01-bk-12820-KSJ |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | |
| MICHAEL MOECKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary No. 6:03-ap-00662-KSJ |
| vs. | ) | |
| | ) | |
| DAVID L. SUMMITT | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In 1999, two-and-one-half years before it filed this reorganization case, the debtor, Transit Group, Incorporated ("Transit"), purchased the defendant's trucking company, Bestway Trucking, Inc. ("Bestway"). The plaintiff, Michael Moecker, Creditor Agent for the Transit Group Creditors' Trust, relying on the fraudulent transfer laws in four states—Florida, Tennessee, Indiana or Ohio—argues that Transit's acquisition of Bestway was constructively fraudulent and is avoidable because Transit was insolvent at the time and did not receive a reasonably equivalent value in the exchange (Doc. No. 10).

The defendant, David L. Summitt, has filed a Motion for Summary Judgment (the "Motion") (Doc. No. 22), which the plaintiff opposes (Doc. No. 30). The issues raised on summary judgment are whether the plaintiff has derivative standing to assert this avoidance action, which state law controls, whether the plaintiff waived or released the action, and whether

the action is otherwise precluded or barred by judicial estoppel. After considering the pleadings, affidavits, the parties' arguments, and applicable law, the defendant's Motion is denied.

Some facts indeed are undisputed. Transit was incorporated[1] in 1985 as a parcel delivery business. In an attempt to increase efficiency, in 1997, Transit reorganized into a holding company with the goal of acquiring and consolidating short, medium, and long haul trucking companies into its operations. Between 1997 and 1999, Transit bought approximately twenty trucking companies and attempted to integrate each new company into its operations.

One of the trucking companies Transit acquired was Bestway. In July, 1999, Transit entered into an agreement to purchase[2] (the "Purchase Agreement") the defendant's trucking company, Bestway,[3] as a wholly owned subsidiary. Under the Purchase Agreement, Transit purchased all of the issued and outstanding capital stock of Bestway from the defendant for $14,560,708 (the "Purchase Price") consisting of cash in the amount of $6,800,000, and 1,542,501 shares of Transit stock with an ascribed value of $7,760,708. The Purchase Agreement, which the parties executed in Georgia, contained a choice of law provision stating that it would "be governed by the laws of the State of Indiana without regard to conflicts of laws principles, other than the merger provisions contained in Article 2, which shall be governed by the laws of the State of Kentucky." (Doc. No. 22, p. 3, Section 10.13). The parties also entered into a separate agreement whereby the defendant, Mr. Summitt, would remain employed as Bestway's president for a five-year term (the "Employment Agreement").

---

[1]    On the petition date, Transit was a Florida corporation with its headquarters and principal place of business in Atlanta, Georgia.

[2]    The parties refer to Transit's acquisition of Bestway as a merger transaction. However, for simplification purposes in this opinion, the Court refers to the transaction as a purchase. The exact transaction details are not relevant on this summary judgment.

[3]    Bestway was a Kentucky corporation at the time of the acquisition.

Approximately six months after executing the Purchase Agreement and Employment Agreement, the parties commenced litigation that would ultimately continue in various forms pre-petition, post-petition, and post-confirmation. However, with the exception of this adversary proceeding, to date, the parties consensually resolved every dispute. For example, before Transit filed this bankruptcy case, the parties litigated and resolved, in both Georgia and Kentucky state courts, a dispute regarding the defendant's Employment Agreement (the "State Court Cases").

After the bankruptcy filing, the parties litigated and again consensually resolved two matters in this Court. The first contested matter involved the defendant's motion to compel Transit to assume or reject his Employment Agreement (the "Motion to Compel") (Main Case, Doc. No. 617). The second dispute involved an objection to the proofs of claim filed by the defendant (the "Claims Objection") (Main Case, Doc. No. 933). Because the parties were able to consensually resolve the State Court Cases, the Motion to Compel, and the Claims Objection, the defendant assumed that all issues in connection with Transit's acquisition of Bestway and Transit's bankruptcy were settled. Therefore, when the plaintiff filed this adversary proceeding against the defendant seeking to recover the Purchase Price, the defendant was unpleasantly surprised. Because the various releases and orders associated with the settlement of these disputes are relevant to the pending Motion, the disputes are described in more detail below.

As to the State Court Cases, approximately six months after the time Transit acquired Bestway, Transit terminated the defendant from his position as president of the Bestway subsidiary. In response, the defendant filed a lawsuit[4] against Transit and Bestway in Kentucky on February 4, 2000. The parties eventually were able to resolve their differences, and, on June 1, 2000, they executed a Settlement and Limited Release Agreement (the "Release Agreement")

---

[4] This case is styled as <u>David L. Summitt and Michael R. Motsinger vs. Bestway Trucking, Inc., and Transit Group, Inc.</u>, Jefferson Circuit Court Division, Case No. 00 CI 00877.

(Doc. No. 23, Exhibit C, p. 6, ¶ 6) settling the case as well as a separate but similar lawsuit[5] filed by Bestway against the defendant in Georgia.  As relevant here, the Release Agreement specified that Transit and Bestway, collectively defined therein as the "TGI Parties":

> **unconditionally, irrevocably, fully and finally release, acquit and forever discharge the Summitt Parties[6] of and from any and all (i) claims and causes of action which now exist or may hereafter arise as the result of financial representations made in connection with the Merger Transaction**, (ii) all claims and causes of action which now exist stated as a claim or counterclaim in either the Georgia Civil Action or the Kentucky Civil Action, and (iii) all claims and causes of action which now exist or may have existed prior to the date of this agreement relating to the employment of the Summitt Parties by the TGI Parties or relating to the TGI-SUMMITT Agreements.[7] Provided, however, that this release is not intended to and shall in no manner modify, amend, or affect in any way whatsoever any continuing obligation or right of any of the TGI Parties or any of the Summitt Parties under the TGI-SUMMITT Agreements.

(Doc. No. 23, Exhibit C, p. 6, ¶ 6) (emphasis added). Thus, Transit and Bestway released the defendant from any claim based on financial representations made in connection with Transit's acquisition of Bestway and any claim existing on or prior to the date of the Release Agreement concerning the defendant's employment with Transit/Bestway. The defendant also signed a similar release in favor of Transit and Bestway (Doc. No. 23, Exhibit C, pp. 5-6, ¶ 5).

Eighteen months later, on December 28, 2001, Transit filed this Chapter 11 reorganization case. At the time, the parties still had obligations to one another under the defendant's Employment Agreement. Accordingly, on September 11, 2002, the defendant filed

---

[5]  This case is styled as <u>Bestway Trucking, Inc., vs. David L. Summitt</u>, Superior Court of Cobb County, Civil Action File Number 00-1-00659-33.

[6]  The "Summitt Parties" include David Summitt, Jenny Summitt, and Michael Motsinger (Doc. No. 23, Exhibit C, p. 1).

[7]  The TGI-SUMMITT Agreements include all agreements "by any of the TGI Parties and any of the Summitt Parties executed in connection with the Merger Transaction." (Doc. No. 23, Exhibit C, p. 6).

his Motion to Compel asking that the debtor either assume or reject his Employment Agreement

(Doc. No. 617).  The debtor and the defendant ultimately resolved the Motion to Compel and

filed a proposed stipulation with the Court (Doc. No. 708). After certain objections interposed by

the Creditor's Committee were resolved, the Court entered an order on November 5, 2002,

approving a modified stipulation (the "Stipulation") providing in relevant part as follows:

> 3.          In full and final resolution of the issues between the Summitts and
> Transit Group, the parties have agreed to settle the matters between
> them pursuant to the following terms, effective upon execution of
> this stipulation:
>
> a)      the Motion to Compel is WITHDRAWN, with prejudice;
>
> b)      the Executory Contracts are deemed REJECTED, nunc pro tunc to
> the Petition Date;
>
> c)      the Summitts consent to confirmation of the Amended Plan of
> Reorganization, as the same may be modified and further amended
> in a manner not inconsistent with this stipulation;

(Doc No. 726, Exhibit B). The Stipulation resolved all issues relating to the Motion to Compel

insofar as the Employment Agreement was rejected. The defendant also consented to the

confirmation of the debtor's amended plan of reorganization.

Transit confirmed its amended reorganization plan on November 27, 2002 (the

"Amended Plan") (Main Case, Doc. No. 843). The Amended Plan designated a Creditors' Trust

(the "Trust") vested with, among other things, all avoidance actions owned by the debtor's

bankruptcy estate, including claims under Bankruptcy Code[8] Sections 544, 547, 548, 549, 550,

551, and 553. The plaintiff was specifically appointed pursuant to Bankruptcy Code Section

1123(b)(3)(B)[9] and designated as the Trust's Creditor Agent charged with avoiding transfers for

---

[8]     Unless otherwise stated, all references to the Bankruptcy Code herein refer to Title 11 of the United
States Code.

[9]     This statute is discussed in detail on pages 11-16 and 22-23.

the benefit of the Trust's beneficiaries, primarily Transit's unsecured creditors, who would receive a pro rata share of any recovered transfers (Main Case, Doc. No. 606, p. 53; Doc No. 605, pp. 36-37, 80).  No party objected to the plaintiff's appointment.

Following confirmation, the plaintiff, the defendant, and their respective attorneys communicated regarding six claims the defendant filed in the debtor's bankruptcy case. In February, 2003, the plaintiff, acting in his capacity as Creditor Agent, filed the Claims Objection objecting to claims filed by the defendant (Main Case, Doc. No. 933).  The plaintiff objected to the defendant's claims on various grounds.[10]  However, none of the plaintiff's objections were asserted on the basis that the defendant received any transfer avoidable under Bankruptcy Code Section 502(d).[11]

Similar to the Motion to Compel, the parties and their attorneys negotiated and eventually resolved the Claims Objection. On June 12, 2003, the Court entered an order allowing three of the defendant's claims "in the amounts and on the terms referenced therein, pursuant to agreements[12] reached between [the defendant] and the Creditor Agent" (Main Case, Doc. No. 1026). The defendant maintains that at no point in the claims resolution process or discussions between the parties did the plaintiff suggest he may be liable under a claim of fraudulent transfer

---

[10]  The plaintiff objected to Claim 191 seeking $244,500 and proposed to allow the claim in a lesser amount of $210,000. He objected to Claim 192 seeking $858,145 and proposed to allow the claim in the lesser amount of $200,000 pursuant to Bankruptcy Code Section 502(b)(7). The plaintiff objected to claim 193 as being proof of an equity interest which was extinguished at confirmation and proposed to disallow the entire claim. He also objected to claims 209, 210, and 212 as they were duplicates of claims 191, 192, and 193.

[11]  A "Section 502(d)" objection is a bankruptcy term of art indicating that a party has objected to a claim on the grounds that the claimant has received an avoidable, or potentially avoidable, transfer which has not been repaid.  The statute is discussed in detail on pages 18-22.

[12]  The parties did not introduce any written agreements between the parties. Therefore, the Court concludes that the "agreements" referenced in the order on the Claims Objection do not exist as separate documents, but rather simply refer to the parties' oral agreement on the treatment of the claims as noted and detailed in the exhibit to the submitted consent Order allowing the defendant's claims (Main Case, Doc. No. 1026).

in connection with the debtor's acquisition of Bestway several years earlier.  Nor was such a lawsuit suggested by the plaintiff or the debtor when the parties were resolving the defendant's Motion to Compel, or earlier when the parties negotiated and entered into the Release Agreement settling the State Court Cases before Transit filed this Chapter 11 case.

In the Amended Complaint (Doc. No. 10), the plaintiff asserts that Transit's acquisition of Bestway was constructively fraudulent and argues that Transit was either insolvent or became insolvent when it acquired Bestway and did not receive fair consideration in the transfer. Because of this, the plaintiff alleges that Transit's purchase of Bestway is avoidable under the fraudulent transfer provisions of Bankruptcy Code Sections 544 and 550, the Uniform Fraudulent Transfer Act ("UFTA"), and under state laws based on or modeled after the UFTA in Florida, Indiana, Ohio, and Tennessee. More plainly stated, the plaintiff believes Transit paid too much (or at least more than it should have) for Bestway and now wants to recover the Purchase Price from the defendant.

The defendant avers that the first time he learned that the plaintiff would be looking to avoid the sale of his company and recover the Purchase Price was when the plaintiff initiated this adversary proceeding some six years after the parties executed the Purchase Agreement; the defendant felt completely blindsided by the lawsuit. The plaintiff, on the other hand, maintains that notice to the defendant of any specific avoidance action is unnecessary and irrelevant because the plaintiff generally obtained control over *all* possible avoidance actions in connection with the confirmation of Transit's Amended Plan. Indeed, avoidance actions, and the assignment of those actions to the plaintiff, were discussed in varying detail in at least five sections of the

Disclosure Statement[13] and three sections of the Amended Plan.[14] The plaintiff's position is that these general references to avoidance actions are legally sufficient because there is no requirement that potential defendants to such actions be specifically named or notified prior to the initiation of a lawsuit.

The defendant contends he is entitled to entry of summary judgment in his favor on five issues:

- First, the defendant argues that only trustees or debtors in possession can properly pursue avoidance claims and that the plaintiff lacks any derivative standing to prosecute the claims.

- Second, even if the plaintiff <u>does</u> have standing, the defendant argues that the plaintiff waived the claims by failing to: (i) object to any of his claims on the basis that he was in receipt of an avoidable transfer pursuant to Section 502(d), (ii) resolve the avoidance action contemporaneously with the Claims Objection, or (iii) specifically reserve a right to pursue the action in the Order resolving the Claims Objection.

- Third, the defendant argues that the debtor already released him from the claims.

- Fourth, the defendant argues that the plaintiff's avoidance action is barred by judicial estoppel because it was not adequately disclosed in the debtor's Schedules, Disclosure Statement, or in the Amended Plan.

- Fifth, in the event the plaintiff is permitted to proceed in this adversary case, the defendant argues that Kentucky law, and not the laws of Florida, Indiana, Ohio, or Tennessee as asserted in the Amended Complaint, should apply and that the plaintiff's complaint fails because it is not pled under Kentucky law.

**<u>Summary Judgment Standard.</u>**  Pursuant to Federal Rule of Civil Procedure 56, which is applicable under the Federal Rule of Bankruptcy Procedure 7056, a court may grant summary

---

[13]  Main Case, Doc No. 605, pp. 30-31, 47, 67, 80-81, 85; Exh. F, pp.7-8).

[14]  Main Case, Doc. No. 606, p. 53; Exh. A., p. 2, items 6 and 7; Exh. E., Art. VIII, Section 8.2, pp. 7–10.

judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.    The moving party has the burden of establishing the right to summary judgment. Fitzpatrick v. Schlitz (In re Schlitz), 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986). In determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).    Therefore, a material factual dispute precludes summary judgment.    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).    When opposing a motion for summary judgment, a party may not simply rest on the pleadings but must demonstrate the existence of elements essential to the non-moving party's case and for which the non-moving party will bear the burden of proof at trial.    Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) cert. denied, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

**Standing.**    The defendant argues that only trustees, pursuant to Bankruptcy Code Section 544,[15] or debtors in possession, pursuant to Bankruptcy Code Section 1107(a),[16] have standing to pursue fraudulent transfer claims. Since the plaintiff is neither, the defendant argues that he lacks standing to pursue the claims in this adversary proceeding. The defendant bases this argument on

---

[15]    Bankruptcy Code Section 544(b) provides in relevant part as follows:

(1) [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

[16]    Bankruptcy Code Section 1107(a) provides as follows:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

the United States Supreme Court's decision in <u>Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.</u>, 530 U.S.1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), ruling that another portion of the Bankruptcy Code worded similarly to Section 544(b), Section 506(c),[17] provides a remedy exclusive to trustees and debtors in possession.

In <u>Hartford Underwriters</u>, an administrative claimant in the debtor's converted Chapter 7 case filed suit against a secured creditor seeking to recover certain costs pursuant to Bankruptcy Code Section 506(c). The claimant, an insurance company, never sought the joinder or participation of the Chapter 7 trustee in deciding to directly assert the Section 506(c) claim against the secured creditor. The Supreme Court, mindful of the trustee's unique role in bankruptcy proceedings and observing that the statute's plain language granted a right of recovery to the trustee and no other party, concluded that Section 506(c) could not be used by the insurance company to sue a secured creditor. 530 U.S. at 6-11, 120 S.Ct. at 1947-50.

Because the wording in Section 506(c) and Section 544(b) is similar,[18] the defendant argues that <u>Hartford Underwriters</u> should be extended to Section 544(b) to bar plaintiff from suing here. Section 544(b)(1) states that "[t]he trustee may avoid any transfer." Section 506(c) states that "[t]he trustee may recover." Because the Supreme Court in <u>Hartford Underwriters</u> interpreted the language "[t]he trustee may recover..." as applying to the trustee and no other

---

[17]  Bankruptcy Code Section 506(c) provides as follows:

(c)  The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

[18]  Although the language of the two statutes is similar, the powers created by each statute are quite different. Section 544 confers creditor status on a trustee empowering him or her to avoid transfers pursuant to applicable state laws, and Bankruptcy Code Section 506(c) permits a trustee to surcharge "property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such a claim." 11 U.S.C. § 506(c). Section 1107(a) vests debtors in possession with the rights and powers supplied by both statutes.

party, the defendant urges this Court to interpret the language "[t]he trustee may avoid any transfer" in the same manner here.[19]

However, the standing issue and facts in <u>Hartford Underwriters</u> are readily distinguishable from the standing issue and facts in this case. In <u>Hartford Underwriters</u>, the claimant asserted an independent cause of action under Section 506(c); any recovery would have inured only to the benefit of the single claimant and not to the pool of unsecured creditors. Moreover, the claimant neither sought nor obtained prior permission to file the suit from the bankruptcy court or the Chapter 7 trustee.

Here, by contrast, the plaintiff was specifically retained pursuant to Section 1123(b)(3)(B)[20] and is suing under the authority granted in the debtor's confirmed Chapter 11 plan. Sections 1123(b)(3)(A) and (B) specifically contemplate that a debtor in  a confirmed plan of reorganization may appoint a representative to pursue recovery of any claim or interest belonging to the debtor or to the estate, which properly includes avoidance claims.  Confirmation of a plan of reorganization can occur only with the consent of the majority of creditors and approval of the bankruptcy court.  Thus, here, the plaintiff is operating with the consent of the debtor in possession, the approval of the majority of the debtor's creditors, and the authorization of this Court.  Moreover, any recovery obtained by the plaintiff will benefit all or nearly all

---

[19]    Like Bankruptcy Code Sections 506(c) and 544, several other sections of the Bankruptcy Code, such as Sections 547 and 548, also designate and empower "the trustee" to avoid transfers.

[20]    Bankruptcy Code Section 1123(b)(3) provides as follows:

(b)  Subject to subsection (a) of this section, a plan may—

      (3) provide for—

        (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

        (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;

creditors of the estate.  This is very different from the case of a single administrative creditor acting solely out of self-interest to pursue its own claim.

In <u>Hartford Underwriters</u>, the Supreme Court did not consider the question[21] of derivative standing[22] presented here: whether a debtor in possession, such as Transit, can use Section 1123(b)(3)(B) to assign the rights supplied by Sections 544(b) and 1107(a) to a third party, here a Creditor Agent charged with pursuing avoidable transfers for the benefit of the debtor's unsecured creditors. The <u>Hartford Underwriters</u> Court only observed, and did not comment on, the practice of granting derivative standing to creditors or creditors' committees to bring avoidance actions under other sections of the Bankruptcy Code also referencing only the trustee. 530 U.S. at 13, n.5, 120 S.Ct. at 1951, n.5. The Court concluded that such practices were not analogous because the claimant in <u>Hartford Underwriters</u> asserted an <u>independent</u> cause of action. Since the plaintiff in this case asserts standing pursuant to the specific grant of authority in the debtor's confirmed plan, i.e., Section 1123(b)(3)(B), <u>Hartford Underwriters</u> is inapposite.

Prior to the <u>Hartford Underwriters</u> opinion, the Eleventh Circuit Court of Appeals addressed arguments concerning whether a "creditor trustee" in a debtor's Chapter 11 case had standing to assert a claim against the debtor under Section 548 in <u>Nordberg v. Sanchez</u> (<u>In re Chase & Sanborn Corp.</u>) 813 F.2d 1177, 1180, n.1 (11th Cir. 1987).  The Bankruptcy Court had concluded that, pursuant to Section 1123(b)(3)(B), the creditor trustee could bring the lawsuit since no trustee had been appointed under the plan and the debtor in possession had interests in common with the defendants.  <u>Nordberg</u>, 813 F.2d at 1180, n.1. Like the defendant in this case, the defendant on appeal in <u>Nordberg</u> argued that since the plaintiff was neither the trustee nor the

---

[21]    The Supreme Court explicitly stated that it was not addressing "whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under Section 506(c)." 530 U.S. at 13, n.5, 120 S.Ct. at 1951, n.5.

[22]    Derivative standing, also referred to as third-party standing, is "[s]tanding held by someone claiming to protect the rights of others." BLACK'S LAW DICTIONARY 1413 (7th ed. 1999).

debtor in possession, the plaintiff did not have standing to assert a fraudulent transfer claim. In addition, the defendant argued that the creditor trustee "was not, in fact 'appointed' by the court to enforce the claims." Id.

> In rejecting the defendant's arguments, the Eleventh Circuit Court concluded that:

> [a]lthough the [bankruptcy] court did not formally and specifically appoint the creditor trustee to enforce the claims, **the reorganization plan approved by the court recognized that the creditor trustee would have the responsibility of pursuing claims of the debtor. The court's approval of a plan granting this authority to the creditor trustee was sufficient, under the Bankruptcy Code, to confer on the creditor trustee standing to assert this claim.**

Nordberg, 813 F.2d at 1180, n.1 (emphasis added). Thus, the Eleventh Circuit found that the creditor trustee had derivative standing to bring fraudulent transfer causes of action pursuant to Sections 548 and 1123(b)(3)(B), the latter statute being the same statute cited in Transit's confirmed plan authorizing the plaintiff to assert state law claims pursuant to Section 544.

The facts in this case are similar to those in a recent decision issued by the Bankruptcy Court for the Western District of Pennsylvania in Official Committee of Unsecured Creditors of J. Allan Steel Co., v. Nucor-Yamato Steel Co. (In re J. Allan Steel Co.), 323 B.R. 425 (Bankr. W.D. Penn. 2005). In that Chapter 11 case, the debtor assigned its right to prosecute avoidance actions to the creditors' committee in its plan of reorganization, and the Bankruptcy Court confirmed the plan. When the creditors' committee subsequently initiated a preference action against one of the debtor's creditors pursuant to Section 547, the creditor responded by arguing that the creditors' committee lacked standing to prosecute the action. The Bankruptcy Court rejected this argument finding that the creditors' committee had the requisite standing and that, because the debtor authorized the creditors' committee to "act as its surrogate in deciding whether to bring and to prosecute avoidance actions,… the principle that only a trustee or a debtor-in-possession may bring an avoidance action in accordance with § 547 is not violated…"

J. Allan Steel, 323 B.R. at 432. Moreover, because the plan had been confirmed, the court concluded that all issues concerning the creditors' committee's standing were *res judicata*: Section 1141(a)[23] provides that confirmation orders are binding on the debtor and creditors alike as to all issues[24] that could have been decided at the confirmation hearing. J. Allan Steel, 323 B.R. at 432 (citing Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir.1997)). Any issues or objections to the debtor's assignment of its avoidance actions to the creditors' committee should have been addressed prior to or at the time of confirmation.

The same is true here, albeit in the context of Bankruptcy Code Section 544, rather than Section 547. The plaintiff was duly appointed under Section 1123(b)(3)(B). The Amended Plan was confirmed with the overwhelming consent of the debtors' creditors. Any concerns regarding the plaintiff's standing to bring avoidance actions should have been raised at or prior to confirmation.

In order to assert the avoidance claims against the defendant, the plaintiff need only establish that: (1) he has been appointed, and (2) he is a representative of the estate. Pardo v. Pacificare of Tex., Inc. (In re APF Co.), 264 B.R. 344, 353 (Bankr.D.Del.2001) (citing Retail Mktg. Co. v. King (In re Mako, Inc.), 985 F.2d 1052, 1054 (10th Cir.1993); Citicorp Acceptance Co. v. Robison (In re Sweetwater), 884 F.2d 1323, 1327-28 (10th Cir.1989); McFarland v. Leyh (In re Texas Gen. Petroleum Corp.), 52 F.3d 1330, 1335 (5th Cir.1995)). "The first element requires that the court approve the appointed party, as for example, through plan confirmation."

---

[23]  Bankruptcy Code Section 1141(a) provides as follows:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

[24]  This is true even where a plan provision is inconsistent with the Bankruptcy Code. J. Allan Steel, 323 B.R. at 433 (citing Trulis v. Barton, 107 F.3d 685, 691 (9th Cir.1995)).

Pardo, 264 B.R. at 353 (citing Sweetwater, 884 F.2d at 1326). "The second element generally requires a court to decide 'whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors.'" Id. (citing Sweetwater, 884 F.2d at 1327).

The plaintiff has established both elements in this case. He was appointed pursuant to Bankruptcy Code Section 1123(b)(3)(B), which this Court approved in confirming the Amended Plan. The issue is now *res judicata*. Any amounts recovered by the plaintiff will be distributed to the beneficiaries of the Trust, which is largely comprised of the debtors' unsecured creditors (Main Case, Doc. No. 606, p. 53; Doc No. 605, pp. 36-37, 80). Therefore, any recovery will benefit the debtor's estate.

Although other courts in Chapter 7 cases have ruled that bankruptcy courts lack the authority to bestow standing on creditors to prosecute avoidance claims on behalf of the estate,[25] a different analysis applies in Chapter 11 cases. Sections 1107 and 1123(b)(3)(B) of the Bankruptcy Code allow creditors' committees or other similarly situated entities to pursue avoidance actions such as those asserted here where they are appointed and approved under a confirmed plan or by Court order. See In re Spaulding Composites Co., Inc., 207 B.R. 899, 904 (9th Cir. B.A.P. 1997) (debtor in possession's stipulation effective to confer standing on unsecured creditors' committee); Coral Petroleum, Inc. v. Banque Paribas-London, 797 F.2d

---

[25] See In re Harrold, 296 B.R. 868, 872-75 (Bankr. M.D. Fla. 2003) (collecting Chapter 7 cases where courts have declined to confer standing to bring causes of action under Sections 547 and 548, where courts have and have not permitted exceptions to that general rule, and where courts in Chapter 11 cases have permitted creditor committees to bring avoidance actions); In re Pro Greens, Inc., 297 B.R. 850, 856 (Bankr. M.D. Fla. 2003) (the power to prosecute fraudulent transfer actions pursuant to Section 548 lies solely with the trustee in a Chapter 7 case; however, a "reorganization trustee, post-confirmation, may pursue claims, including avoidance actions against third parties, on behalf of the estate if the confirmed plan and order of confirmation so provides."); Surf N Sun Apts., 253 B.R. 490, 494-95 (M.D. Fla. 1999) ("The bankruptcy court may not, however, unilaterally confer standing upon the creditor to pursue the claim itself. If such authority is to be granted, it must come from Congress and not the courts.")

1351, 1362-63 (5th Cir.1986) (same). Accordingly, the Court holds that the plaintiff does have derivative standing to pursue the claims against the defendant in this adversary proceeding.

**Release**. The defendant next argues that, even if the plaintiff <u>does</u> have standing to pursue avoidance claims, his case still fails as a matter of law because Transit/Bestway released all claims against him when the parties executed the Release Agreement settling the State Court Cases prior to this Chapter 11 case. The Release Agreement was executed when Transit/Bestway agreed to abide by the terms of the Employment Agreement with Mr. Summitt.  The parties' exchanges releases and the pertinent language in the Release Agreement purports to release the defendant "of and from any and all [] claims and causes of action which now exist or may hereafter arise as the result of financial representations made in connection with the Merger Transaction." (Doc. No. 23, Exhibit C, p. 6, ¶ 6).

The plaintiff argues that the Release Agreement executed between Transit/Bestway and the defendant is irrelevant because the avoidance claims he asserts in the Amended Complaint, pursuant to Section 544 and various state laws, are claims held by the creditors of the debtor's estate, not by the debtor. Transit's creditors never signed the Release Agreement and Transit had no ability to release claims held by its creditors.  As such, plaintiff argues that the Release Agreement does not operate as a bar to this adversary proceeding.

Initially, the Court observes that the peculiar language in the Release Agreement does not appear to preclude the constructive fraud claim raised by the plaintiff.  The release language merely prevents Transit/Bestway from asserting any claim against the defendant arising as a result of "any financial representations made in connection with the Merger Transaction."  To avoid a transfer as constructively fraudulent a claimant must establish that the transfer was for less than reasonably equivalent value.  The key issue is whether the actual value of the asset at the time of the transfer was paid.   The accuracy or inaccuracy of financial representations made

at the time of the transfers is only tangentially relevant.  Because the Release Language is only marginally relevant in resolving the plaintiff's claims, the Court does not agree that the release, even if applicable to the plaintiff's claims, automatically would preclude this lawsuit; however, for the purposes of ruling on the pending Motion, the Court will assume, for the purposes of this Memorandum Opinion only, that the Release Language could affect the outcome.[26]

The issue then is whether Transit/Bestway had the authority to release claims of creditors for constructive fraud at the time the Release Agreement was signed.  The Court finds they did not.  Section 544 permits a trustee to bring state law causes of action belonging to a debtor's creditors for the benefit of the estate. In re DLC, Ltd., 295 B.R. 593, 601-602 (8th Cir. B.A.P. Neb. 2003) ("Bankruptcy trustees use section 544(b) as a conduit to assert state law-based fraudulent conveyance actions in bankruptcy"). The trustee's rights to avoid transfers are 'completely derivative of those of an actual unsecured creditor.' In re G-I Holdings, Inc. 313 B.R. 612, 633 (Bankr.D.N.J.2004) (citations omitted). A debtor in possession or other court authorized and approved entity can also pursue these claims pursuant to Sections 1107(b) and 1123(b)(3)(B).

Here, Transit/Bestway signed the Release Agreement eighteen months before filing this Chapter 11 case.  At the time the release was signed, they did not have the right to assert any fraudulent transfer claim on behalf of their creditors.  Because only creditors had the right to assert these claims, Transit/Bestway had no ability to release such claims before it filed this reorganization case.  Their right to assert the claims arises only because the Bankruptcy Code grants these rights to trustees, debtors in possession, and their designated agents.  Transit had no

---

[26] For example, perhaps if Mr. Summitt overstated Bestway's profitability (the financial representation) and Transit paid the inflated price (i.e., Transit paid more than reasonably equivalent value), the Release Agreement arguably could apply.  However, this is pure speculation and merely an example of one way the Release Agreement could be relevant.  The Court stresses that none of these facts are in the record.

rights or entitlement to these claims at that time, and the Release Agreement cannot now bar the avoidance claims asserted by the plaintiff, who was not a party to the Release Agreement. Therefore, regardless of the applicability of the Release Agreement, the claims belonged to Transit's creditors when the Release Agreement was executed prior to petition and does not bar this action.

**Section 502(d) and Waiver**. The defendant next claims that the plaintiff waived this avoidance action by failing to: (i) object to his claims pursuant to Section 502(d),[27] (ii) resolve the avoidance action contemporaneously with the Claims Objection, and (iii) specifically reserve a right to pursue the action in the Order resolving the Claims Objection. In support, the defendant relies on a decision by the Delaware Bankruptcy Court, In re La Roche Indus., Inc., 284 B.R. 406 (Bankr. D. Del. 2002), in which the Court concluded that Section 502(d) "stands for the proposition that if a claim is allowed there is no longer a voidable transfer due from that claimant" and that voidable transfers must be resolved during the claims process and not at a later time. 284 B.R. at 408-09. Because his claims were allowed, the defendant argues that he could not have received a voidable transfer based on LaRoche's interpretation of Section 502(d).

The plaintiff vigorously opposes any suggestion of waiver relying, among other cases, on a later decision by the same Delaware Bankruptcy Court, In re TWA Inc. Post Confirmation Estate, 305 B.R. 221, 225 (Bankr.D.Del.2004). In that Chapter 11 case, the defendant, like the defendant here, cited LaRoche and argued that because the Court approved a stipulation allowing its claims, Section 502(d) precluded a subsequent preference action. In rejecting the defendant's

---

[27]   Bankruptcy Code Section 502(d) provides as follows:

> (d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

position, the Bankruptcy Court for the District of Delaware acknowledged that a split of authority had emerged surrounding Section 502(d) and aptly summarized the cases and arguments advanced for and against each position.  Some courts have concluded that avoidance actions must be brought before or at the same time as claim objections, <u>TWA</u>, 305 B.R. at 224-26  (<u>citing</u> <u>LaRoche</u>, <u>Katchen v. Landy</u>, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), and <u>Caliolo v. Azdel</u> (<u>In re Cambridge Indus. Holdings Inc.</u>), No. 00-1919, 02-03293, 2003 WL 21697190 (Bankr.D.Del. July 18, 2003)).  Others have concluded that avoidance actions were not prohibited under Section 502(d) if a debtor files such an action after a claim was allowed by settlement or a hearing.  <u>TWA</u>, 305 B.R. at 224-26 (<u>citing</u> <u>Peltz v. Gulfcoast Workstation Group</u> (<u>In re Bridge Info. Sys., Inc.</u>), 293 B.R. 479 (Bankr.E.D.Mo.2003), <u>Rhythms NetConnections,</u> <u>Inc. v. Cisco Systems, Inc.</u> (<u>In re Rhythms NetConnections</u>), 300 B.R. 404 (Bankr.S.D.N.Y.2003)).

The <u>TWA</u> Court adopted the approach followed by <u>Bridge</u> and <u>Rhythms</u>, and concluded that Section 502(d) "should not be used to prohibit a preference action that is commenced after a claim is allowed by settlement or a hearing." <u>TWA</u>, 305 B.R. at 226. In so concluding, the <u>TWA</u> Court observed, among other things, that where "reorganization prospects look good, it may be a waste of estate resources to undertake a preference analysis while the estate is engaged in the claims resolution process." <u>TWA</u>, 305 B.R. at 227.  If claims are sufficiently reduced in amount, avoidance actions may be unnecessary.  Moreover, even if avoidance actions are merited, creditors benefit from pursuing simple actions before embarking on litigation to avoid more complex claims, such as the constructive fraud claim raised in this adversary proceeding. Certainly, resolving avoidance actions like this in conjunction with relatively simple allowance or disallowance of proofs of claims, such as the amounts due under the Employment Agreement,

would reduce recovery to all creditors, across the board.  Potentially unneeded litigation costs would be incurred for no purpose.

The District Court in a similar, recent case issuing out of Virginia, In re Dornier Aviation (North America), Inc., 320 B.R. 831 (E.D. Va. 2005), also interpreted the effect of Section 502(d). Like the TWA Court, the Court in Dornier Aviation adopted the interpretation articulated in Bridge and Rhythms, but the Court also addressed arguments concerning whether Section 502(d) was available to creditors whose claims were allowed as a defense to subsequent avoidance actions.

Dornier Aviation contains some facts similar to those presented here. In that Chapter 11 case, two corporate executives were terminated from the debtor's employ. Both executives had employment agreements providing two years of severance pay, and each executive filed a proof of claim seeking the severance payment from the debtor's estate. The liquidating trustee objected to the claims, but the parties ultimately resolved the issues and entered into settlement agreements.[28]

Some time later, the liquidating trustee filed complaints against the executives seeking to avoid certain bonuses and other funds paid by the debtor to the executives in the year preceding the debtor's bankruptcy case.[29] The executives filed for summary judgment arguing that the trustee could not prosecute his avoidance action because the parties already had entered into an agreement to settle their claims. Dornier Aviation, 320 B.R. at 834. The Bankruptcy Court agreed and entered summary judgment in favor of the executives based on Section 502(d),

---

[28]  Each executive also signed a waiver and release agreement. The executives later argued that the waiver and release agreement executed in connection with the settlement agreement was a mutual release that barred the avoidance actions; however, based on the language in the waiver and release, the Bankruptcy Court found, and the District Court agreed, that the waiver did not bar the complaint. 320 B.R. at 834, n.7.

[29]  The bonuses and other funds were not part of the payments at issue in the settlements. Dornier Aviation, 320 B.R. at 833-34.

"principles of fairness and finality," and "concerns for judicial economy and the value of resolving all related issues at one time." Id.

On appeal, the District Court considered the differing interpretations of Section 502(d) and the parties' specific arguments regarding whether Section 502(d) "acts only as an affirmative defense available to debtors or may also be used by creditors… whose claims already have been allowed… to defeat later avoidance actions." Id. at 835.  In reversing the Bankruptcy Court and endorsing the approach taken in TWA, Bridge, and Rhythms, the District Court reasoned that:

> A reading of § 502(d) that forces a debtor to choose between (1) disrupting the orderly and careful processing of creditors' claims and its own avoidance actions and (2) protecting all creditors' rights would not effectuate Congress's intent as expressed in the Bankruptcy Code… [and] that the realities of bankruptcy administration and the potential detrimental effect on other creditors mandate against barring avoidance actions against creditors whose claims have been settled or adjudicated.

Id. at 839. The District Court concluded that Section 502(d) "clearly provides a mechanism for debtors to disallow creditors' claims when those creditors owe money or other assets to the debtor" and that nothing in the "plain language of the statute provide[s] or even suggest[s] a corollary right of creditors to dispute avoidance actions on the basis of previously settled claims." Id. at 837. Accordingly, Section 502(d) provides "an affirmative defense for debtors to creditors' claims, not a means by which creditors can escape avoidance actions that are filed by debtors after the creditors' claims have been settled or litigated." Id.

For the reasons articulated in TWA and Dornier Aviation, this Court likewise concludes that debtors can use Section 502(d) as an affirmative defense to challenge a proof of claim but that the defendant/creditors cannot employ Section 502(d) as a sword to preclude later lawsuits brought to avoid transfers. Failing to interpose an objection to claims on the basis of Section 502(d) does not bar a subsequent avoidance action, nor is the plaintiff required to resolve

avoidance actions in tandem with objections to claims.   Creditors whose claims have been allowed or settled in connection with a bankruptcy case cannot use Section 502(d) to bar a later avoidance action.   Accordingly, the avoidance claims asserted by the plaintiff were not waived by failing to address the claims in the orders on the Claims Objection.

The defendant raises one last waiver argument.   Summitt argues that the plaintiff waived the action by failing to specifically reserve it in the Order resolving the Claims Objection entered by the Court on June 12, 2003 (Main Case, Doc. No. 1026) or in connection with confirmation of Transit's Amended Plan.   However, for two reasons, this is not the case.

First, as stated above, Section 502(d) does not require a contemporaneous resolution of claims and avoidance actions. Second, there is no requirement that the plaintiff specifically identify each and every avoidance action and affirmatively reserve each specific future cause of action against every single potential defendant in order to retain the ability to preserve those claims after confirmation. Potential defendants simply are not entitled to receive such advance notice of potential causes of action.   A general disclosure that a debtor or its designee intends to pursue avoidance actions post-confirmation is sufficient.

The standard for preserving causes of action for the benefit of creditors was expressed in In re Pen Holdings, Inc., 316 B.R. 495, 500 (Bankr.M.D.Tenn.2004).   In that case, the Bankruptcy Court for the Middle District of Tennessee considered the potential that *res judicata* could preclude preference/avoidance actions if they are not reserved prior to confirmation. The Court explained that debtors could avoid a *res judicata* effect if they reserved the right to bring preference actions after confirmation by including certain language in the Chapter 11 plan. Pen Holdings, 316 B.R. at 498-99. The language containing this "power of preservation" is found in Section 1123(b)(3). Id. at 499. The purpose of Section 1123(b)(3) is to generally notify creditors

that "there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee." <u>Id.</u> at 500-01.

The purpose of Section 1123 is not, however, "to protect defendants from unexpected lawsuits." <u>Id.</u> at 504. Rather, '[t]he disclosure and notice afforded by a section 1123(b)(3) retention provision . . . is directed towards the estate's creditors, not the potential defendants on the reserved claims.' <u>Id.</u> at 500 (citing <u>Kmart Corp. v. Intercraft Co.</u> (<u>In re Kmart Corp.</u>), 310 B.R. 107, 120 (Bankr.N.D.Ill.2004) (citing <u>In re Goodman Bros. Steel Drum Co.</u>, 247 B.R. 604, 608 (Bankr.E.D.N.Y.2000) ("noting that under Bankruptcy Rule 3017, unless the potential preference defendants are also creditors, they are not entitled to notice of the plan confirmation hearing or to receive copies of the plan and disclosure statement")))).

The test of whether avoidance actions were reserved by language in a reorganization plan is whether the reservation is worded sufficiently to "allow creditors to identify and evaluate the assets potentially available for distribution." <u>Pen Holdings</u>, 316 B.R. at 504. Here, the plaintiff was appointed pursuant to Section 1123(b)(3)(B) in the Amended Plan and vested with the authority to pursue transfers under Sections 544, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code. Avoidance actions were discussed in varying detail in at least five sections of the Disclosure Statement and three sections of the Amended Plan.[30] Certain classes of claims were to be paid from the proceeds recovered from avoided transfers. This is sufficient to preserve the plaintiff's right to pursue the transfer alleged here.[31]   Creditors received adequate and sufficient notice of the debtor's reservation of claims.  Recipients of avoidable transfers are

---

[30]   See footnotes 13 and 14.

[31]   Both the Disclosure Statement and the Amended Plan make multiple references to the plaintiff's powers of avoidance (Doc. No. 605, pp. 47-48, 67, 80-81, 85; Exh. B, p. 2; Exh. F, pp. 7 -8) (Doc. No. 606, pp. 52-53; Exh. A, pp. 7-8).

entitled to no notice of any type regarding a debtor's intention to retain the right to file actions post-confirmation.

**Judicial estoppel.**  On a related issue, the defendant also urges this Court to invoke the equitable doctrine of judicial estoppel to bar plaintiff's avoidance action, contending that the debtor failed to disclose it as an asset of the estate in its schedules, Disclosure Statement, or Amended Plan. Therefore, the defendant asserts the plaintiff should be estopped from pursuing recovery of the Purchase Price since the debtor, by its omission, implicitly denied having any such cause of action. Moreover, the defendant suspects that the plaintiff concealed this action until after they settled the Claims Objection in order to obtain his vote in favor of the Amended Plan. This, he maintains, is "sandbagging" and simply unfair (Doc. Nos. 22 and 23).

The plaintiff acknowledges that the avoidance action against the defendant was not specifically listed as an asset in the debtor's schedules. However, he maintains that the Disclosure Statement and the Amended Plan contemplated such actions and contained adequate disclosure of avoidance actions in general. Furthermore, he argues that the defendant simply cannot establish the requisite elements of judicial estoppel to preclude this lawsuit.

The Eleventh Circuit Court of Appeals discussed judicial estoppel in Parker v. Wendy's Intern'l, Inc., 365 F.3d 1268 (11th Cir. 2004)[32] and in Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002). "Judicial estoppel is an equitable doctrine invoked at a court's discretion" that precludes a party from asserting inconsistent claims in legal proceedings. Burnes, 291 F.3d at 1285-86 (citing New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001)). Courts can invoke the doctrine "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions." Burnes, 291 at 1285-

---

[32]    The Parker Court also questioned whether judicial estoppel was correctly applied in Burnes, and opined that a more appropriate defense in that case would have been that the debtor lacked standing. 362 F.3d at 1272.

87 (citing <u>New Hampshire</u>, 532 U.S. at 749-50, 121 S.Ct. at 1814; <u>American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.</u>, 710 F.2d 1528, 1536 (11th Cir.1983) ("judicial estoppel applies to the 'calculated assertion' of divergent positions")). The doctrine should not be invoked when the prior position was a result of inadvertence or good faith mistake. <u>Burnes</u>, 291 F.3d at 1285-87 (citations omitted).

While not an exact science, courts in the Eleventh Circuit generally consider two factors in determining whether to apply judicial estoppel to a particular case. <u>Parker</u>, 365 F.3d at 1271 (citing <u>New Hampshire</u>, 532 U.S. at 750, 121 S.Ct. at 1815); <u>Burnes</u>, 291 F.3d at 1285 (citing <u>Salomon Smith Barney, Inc. v. Harvey, M.D.</u>, 260 F.3d 1302, 1308 (11th Cir. 2001)). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." <u>Burnes</u>, 291 F.3d at 1285-86 (citing <u>Salomon</u>, 260 F.3d at 1308). These factors do not represent an exhaustive list. Instead, courts must consider all circumstances when determining whether to apply judicial estoppel. <u>Burnes</u>, 291 F.3d at 1286; <u>New Hampshire</u>, 532 U.S. at 750-51, 121 S.Ct. at 1815 (Noting that courts typically consider: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party).

In <u>Parker</u>, the Eleventh Circuit Court of Appeals declined to invoke the doctrine to preclude a Chapter 7 trustee from pursuing an employment discrimination claim that the debtor initially failed to disclose as an asset on her bankruptcy schedules. 365 F.3d at 1269. The Court ruled that the claim was an asset of the debtor's bankruptcy estate and that the trustee, as the real

party in interest, should not be estopped from pursuing the claim since the trustee had not asserted divergent or inconsistent positions in any legal proceedings.

Like the Chapter 7 trustee in <u>Parker</u>, neither the debtor, Transit, nor the plaintiff have asserted any inconsistent positions under oath.  As discussed earlier, Transit could not have pursued avoidance claims, such as this fraudulent transfer claim or other preference claims, until *after* the bankruptcy was filed.  Prior to the Chapter 11 filing, only creditors could have asserted such claims, as allowed by state law.  The right to pursue these types of creditor claims is granted to a Chapter 7 trustee, debtor in possession, or their designee under Section 544 and related provisions of the Bankruptcy Code only after a bankruptcy case is filed.

Of course, the debtor did not list this claim as an asset in its schedules because the debtor did not have any such asset until this case was filed.  From that time forward, neither the debtor nor the plaintiff took any inconsistent position under oath.  Neither party denied the existence of this or any other avoidance claim, and the debtor specifically reserved the right to pursue such claims post-confirmation in its Amended Plan.   No inconsistent positions were taken under oath, nor were any possible inconsistencies calculated to make a mockery of the judicial system. Therefore, judicial estoppel is unwarranted.

Finally, the defendant argues that it is simply unfair and not in the best interest of judicial economy to permit this adversary proceeding to go forward at this late stage after he and the plaintiff already resolved all other issues between them.  The Court is very sympathetic to the defendant's position. The defendant is frustrated and likely feels duped into voting for the Amended Plan. The defendant believed that the last of the issues between the parties were resolved when the Court entered the Order allowing his claims, and he consented to the debtor's Amended Plan. If he had known the plaintiff was going to sue him, he might have withheld his vote in favor of the debtor's plan. He simply did not see this avoidance action looming on the

horizon, and the plaintiff did nothing to tip him off beyond the general language in the Disclosure Statement and Amended Plan specifically reserving avoidance actions and vesting them in the plaintiff.

Perhaps, when the parties resolved the Claims Objection, the plaintiff knew and chose not to reveal that he would be seeking to recover the Purchase Price the debtor paid the defendant for Bestway, or, perhaps, plaintiff had not yet analyzed the estate's avoidance actions at that time. A constructive fraud claim, unlike a simplistic preference claim challenging a more recent transfer, can be difficult to foresee, particularly in a case like this where the transfer occurred nearly six years ago. The defendant understandably is frustrated by the belated litigation.

However, sympathy is not justification for entry of a judgment. Defendants, such as Mr. Summitt, are not entitled to any type of notice or warning prior to the filing of the avoidance action. Creditors are entitled to know that the debtor or its designee may pursue such claims, but, as explained earlier, the recipients of fraudulent transfers are not required to receive any type of pre-suit notice. Indeed, most Chapter 11 debtors do not even begin a formal analysis of avoidance claims until at or following confirmation. Therefore, the only word of caution to anyone resolving a dispute with a Chapter 11 debtor or a Chapter 7 trustee is to ask the simple question: Do you have an avoidance claim against me? If so, the recipient of the alleged avoidable transfer can address the claim before confirmation and possibly establish the elements of judicial estoppel. Otherwise, the party may be placed in a similar position to Mr. Summitt in this adversary proceeding, an unwitting defendant in a belatedly filed avoidance action.

**Choice of Law.** The defendant argues that Kentucky law, and not the laws of Florida, Indiana, Ohio, or Tennessee as asserted in the Amended Complaint, should apply to this adversary proceeding based on the choice of law provision in the Purchase Agreement providing that Kentucky law would govern disputes in connection with Transit's acquisition of Bestway.

Specifically, Section 10.13 of the Purchase Agreement provided that "[t]his Agreement will be governed by the laws of the State of Indiana without regard to conflicts of laws principles, other than the merger provisions contained in Article 2, which shall be governed by the laws of the State of Kentucky."  (Doc. No. 22, p. 2).  Because plaintiff did not assert any count under Kentucky law in the Amended Complaint, the defendant argues that the Amended Complaint fails to state a claim upon which relief can be granted.

However, parties to a contract cannot elect a choice of law that binds later claims of creditors alleging fraudulent conveyances. Schlumberger Logelco Inc. v. Morgan Equipment Co., No. C-94-1776 MHP, 1996 WL 251951, at *2 (N.D.Cal. May 3, 1996) (noting dearth of cases in which courts have applied a contractual choice of law provision to a fraudulent transfer claim). Rather, the choice of law provision binds only the parties to the contract.  In re O'Day Corp., 126 B.R. 370, 391 (Bankr.D.Mass. 1991); In re Morse Tool, Inc., 108 B.R. 384, 386 (Bankr.D.Mass.1989) ("parties to a contract can specify which forum's law will govern their contract, and courts often follow their choice because both parties to the contract . . . have agreed upon the choice"). Since neither the plaintiff nor the creditors of the estate were parties to the contract, the choice of law provision is not binding in this fraudulent transfer action. O'Day, 126 B.R. at 391; Morse Tool, 108 B.R. at 386.

Here, other than to determine the choice of law provision in the Purchase Agreement is not binding, it is premature to make any final determination about which choice of law controls. Moreover, a court is not required to determine which forum's law applies where the law is essentially the same. Zahn v. Yucapia Capital Fund, 218 B.R. 656, 666 (D.RI.1998).   Transit is a Florida corporation with its principal place of business in Georgia. The contract between the parties was signed in Georgia.  The non-binding contractual choice of law provision is Kentucky

or Indiana law.  The Court is not aware of any differences in UFTA in the laws of these states, but the Court need not reach that issue at this point.

For all the reasons discussed above, the Court concludes that the plaintiff has derivative standing to bring this adversary case and did not waive or release the claims he alleges. In addition, the avoidance action is not precluded or barred by judicial estoppel. Lastly, the choice of law provision in the Purchase Agreement is not binding against the plaintiff and any decision on choice of law is premature. Therefore, the Motion will be denied.

A separate order consistent with this ruling shall be entered.

DONE AND ORDERED in Orlando, Florida on July 15, 2005.

_____
Karen S. Jennemann
United States Bankruptcy Judge

Copies provided to:

Attorney for Plaintiff:  L. William Spivey, 450 S. Orange Avenue, Suite 650, Orlando, FL  32801

Attorney for Plaintiff:  John B. Hutton, Greenberg Traurig PA, 1221 Brickell Avenue, Miami, FL 33131

Attorney for Defendant:  Dennis J. LeVine, Dennis LeVine & Associates, P.O. Box 707, Tampa, FL 33601-0707

Attorney for Defendant:  Norman R. Garvin, 10 W. Market Street, #1500, Indianapolis, IN  46204-2971